IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re Application of:

ALAN J. THOMPSON, )
)
    Petitioner, ) Case No. 05 C 1648
)
v. ) Magistrate Judge Morton Denlow
)
MICHELLE ANNE-MARIE )
BROWN, )
)
    Respondent. )

TO: THE HONORABLE MARK FILIP,
     UNITED STATES DISTRICT JUDGE

## REPORT AND RECOMMENDATION

This is a case brought under the provisions of the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601, *et seq.*, implementing the Hague Convention on the Civil Aspects of International Child Abduction concluded on October 25, 1980. The petitioner, Alan J. Thompson ("Petitioner" or "Thompson") is a resident of England and claims that Michelle Anne-Marie Brown ("Respondent" or "Brown"), who is the Petitioner's ex-girlfriend and the mother of his child, wrongfully removed the child from England, and is now residing in Chicago. Petitioner claims that Respondent's actions are a violation of the Hague Convention. Petitioner seeks to force Brown to return Aaron to England in order to

permit the English court to hold the custody proceedings that have been pending since March, 2002. Petitioner claims that Respondent has, on numerous occasions, failed to return the child or appear in court when summoned. Therefore, Petitioner filed an *Ex Parte* Petition for a Warrant in Lieu of a Writ of *Habeous Corpus*. By this *ex parte* petition, Petitioner seeks a warrant authorizing the U.S. Marshall or any police officer in the State of Illinois to take the Respondent into custody and/or Aaron into protective custody and bring them before the Court for an expedited hearing on Petitioner's Hague Petition for Return of Child Pursuant to the Hague Convention. The district court judge, Judge Mark Filip, requested this Court to make a report and recommendation on the issue of whether to authorize the Warrant in Lieu of Writ of *Habeas Corpus*. This Court recommends that the proposed Order for Issuance of a Warrant in Lieu of a Writ of *Habeas Corpus* be entered. (Copy attached to this Report and Recommendation).

## I. BACKGROUND FACTS[1]

On June 12, 1995, Thompson and Brown gave birth to a child, Aaron Brown-Thompson. Aff. ¶1. Both Thompson and Brown are British citizens and resided in London at the time of Aaron's birth. *Id.* Thompson and Brown did not marry and their relationship ended six months after the birth of their son. *Id.*

---

[1] The following facts have been taken from the Petitioner's Brief in Support of Petition for Return of Child Pursuant to the Hague Convention, referred to herein as "Br. ___", and from the Petitioner's attached affidavit, attached as Exhibit 1 to the brief, referred to herein as "Aff. ___". Because this is an *ex parte* proceeding, the facts do not include input from the Respondent.

In January, 1996, Thompson moved to Chicago for work. Aff. ¶2. Brown and Aaron joined him three months later. *Id.* Thompson asserts that his relationship with Brown quickly deteriorated after her arrival in the United States but claims that for the next two years, both he and Brown lived on the same apartment block. Aff. ¶2.

On January 20, 1998, Thompson petitioned the Cook County Circuit Court to obtain the physical care and possession of Aaron and for an order preventing Brown from removing Aaron from Chicago. Aff. ¶3. The court granted his request for custody and issued a protective order, preventing Brown from removing Aaron from the jurisdiction. *Id.* However, the case was dismissed when Thompson realized that before he filed the petition, Brown had already returned to England with Aaron. *Id.*

The parties returned to Chicago in 1999. At that time, Thompson had contact with Aaron three days a week. Aff. ¶5. However, beginning in September, 2000, the visits became more erratic and eventually Thompson was unable to see Aaron; by October, 2001, Thompson did not even know Aaron's correct address. *Id.* In October, 2001, Thompson petitioned the Cook County Circuit Court to disclose Brown's address in order to find Aaron. Aff. ¶6. It was then that Thompson learned that Brown and Aaron had again returned to England without his knowledge. Aff. ¶6. The Cook County Circuit Court transferred Thompson's proceedings to the jurisdiction of the English Courts. *Id.*

Thompson discovered Brown and Aaron's residence in England and, on January 31, 2002, he filed an application in the Principal Registry of the Family Division of the High

Court of Justice in England ("Principle Registry"), seeking parental responsibility, interim contact, prohibited steps, and in the alternative, a residence order and leave to remove the child. Aff. ¶7. The Principal Registry scheduled the matter for March 5, 2002 and served Brown with notice. Aff. ¶8. Brown did not attend the hearing and neither she nor Aaron have been seen in England since being served. *Id.*

Since February 2002, Thompson has made an "extensive effort" to locate Brown and his son. Aff. ¶ 10. Thompson gained extensive disclosure orders issued by the Principal Registry which were directed at, among others, education authorities, the Child Benefits Agency, the Department of Social Security, Inland Revenue, vehicle registration records, the central registers of the National Health Service, and the results of a National Census. *Id.* When Thompson located Brown in Chicago in May, 2002, she immediately vacated her address in Chicago and returned to England with Aaron. Aff. ¶11.

Since May, 2002, Thompson has continued to search for Brown and Aaron. The Principal Registry issued its most recent disclosure order on January 22, 2004 to obtain the latest phone records for Brown's father in Birmingham, England. Aff. ¶ 12. Through this information, Thompson was able to trace a particular Chicago-area number to a publishing company run by Michelle Anne-Marie Brown. On the website, there is a picture of Brown, although she calls herself "Azania Brown". *Id.* Despite this information, Thompson was unable to find Brown's place of residence. Br. 5. On March 11, 2005, the National Center for Missing and Exploited Children identified 345 N. LaSalle Street, Apartment 2106,

Chicago, Illinois 60610, as Brown's current address. Thompson believes that this is the current residence of Brown and Aaron.

## II. THE HAGUE CONVENTION

The Hague Convention ("Convention"), to which both England and the United States are signatories, was established to protect children from the harm resulting from "wrongful removal or retention" and to establish procedures for returning children to their home country. Convention, Preamble. Article I sets forth these purposes as: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and (b) to ensure that rights of custody ... under the law of one Contracting State are effectively respected in the other Contracting States." Convention, Art. 1. The Convention defines removal or retention of a child as "wrongful" if it is in breach of custody rights under the law of the child's habitual residence, and those custody rights were actually exercised at the time of the child's removal. Convention, Art. 3.

When a person believes that his or her child has been wrongfully removed from the country, the petitioner must contact the Central Authority of his or her country, as directed by the Convention, and may file the action in federal court. *See* Covention, Arts. 8, 11, 29; *see also* 42 U.S.C. §§ 11601 *et seq.* (legislation implementing the Hague Convention). Although the federal court has authority to determine the merits of the abduction claim, it has no authority to make determinations concerning any underlying custody dispute. *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir.1999); Convention, Art. 19. The petitioner has the

5

burden of proving that the other parent wrongfully removed or retained their child, 42 U.S.C. § 11603(e)(1)(A), and if he meets that burden, the child "must be returned unless the defendant can establish one of four defenses." *Friedrich v. Friedrich,* 78 F.3d 1060, 1067 (6th Cir.1996).

In proving that Respondent's retention was "wrongful" under the Convention, Petitioner must establish by a preponderance of the evidence that: 1) Respondent removed or retained the child away from his habitual residence; and 2) Petitioner or another institution or body had custody rights over the child and was exercising them at the time of the wrongful removal or retention, or would have done so but for Respondent's actions. *See Diorinou v. Mezitis,* 237 F.3d 133, 141 (2d Cir. 2001); *Mozes v. Mozes,* 239 F.3d 1067, 1070 (9th Cir.2001); *Fabri v. Pritkin-Fabri,* 221 F.Supp.2d 859, 863 (N.D. Ill. 2001) (Judge Pallmeyer); *Freier v. Freier*, 969 F. Supp. 436, 439 (E.D. Mich. 1996). If the Petitioner meets this burden, then Aaron will be removed unless the Respondent successfully raises one of four defenses.

### III. DISCUSSION

At this time, this Court is not deciding the issue of whether Aaron was "wrongfully removed." *See* 42 U.S.C. § 11603(e)(1)(A). Instead, the issue posed is whether the Court can properly issue a warrant in lieu of a writ of *habeas corpus* on an *ex parte* basis in light of the showing made in Petitioner's papers. ICARA allows for provisional remedies, 42 U.S.C. § 11604(a), and authorizes the court to take measures "under Federal or State law, as

appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a). However, no court may "order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C. § 11640(b). Therefore, this Court must find a basis for granting a warrant in lieu of a writ of *habeas corpus* under both federal and state law.

There is little direct precedent for this issue. Indeed, this Court is aware of only one case in the Northern District of Illinois where a warrant in lieu of a writ of *habeas corpus* was issued in a case under ICARA. *See Fabri*, 221 F.Supp.2d at 874 (issuing a warrant in lieu of a writ of *habeas corpus* in conjunction with an order to return an Italian child back to Italy for parental proceedings); *cf. Tabacchi v. Harrison*, 2000 WL 190576, *8 (N.D. Ill. Feb. 8, 2000) (Judge Gottschall) (deciding a similar case under ICARA without deciding whether to issue a warrant in lieu of a writ of *habeas corpus*).

In other circuits, several federal courts have dealt with the issue of whether a warrant in lieu of a writ of *habeas corpus* can be issued *before* a hearing under ICARA. Although the statute gives authority for such a writ so long as there is support under Federal and State law, 42 U.S.C. § 11640, some courts have refused to take such action. *See e.g., Klam v. Klam*, 797 F.Supp. 202 (E.D.N.Y. 1992) (declining to issue a warrant in a case brought under ICARA because there was no support under New York law and because the petitioner made only a conclusory allegation that the children would be carried out of the jurisdiction if the

7

warrant was not issued); *Tsalafaos v. Tsalafaos*, 34 F.Supp.2d 320 (D. Md. 1999) (declining to issue a warrant in lieu of a writ of *habeas corpus* in a case brought under ICARA because there was no support under Maryland law).

However, a court in the Western District of Pennsylvania issued an *ex parte* warrant in lieu of a writ of habeas corpus under the authority of 42 U.S.C. § 11640. *McCullough v. McCullough*, 4 F.Supp.2d 411 (W.D. Pa. 1998). In *McCullough*, the court issued a warrant to give a Canadian father temporary custody of his two children pending a hearing under ICARA. *Id.* at 416. In that case, the children's mother took the children out of Canada when the petitioner was away on business and was living with them in Pennsylvania at the time of the petition. *Id.* at 413. The court issued the warrant after determining that there was support for the warrant under both the Federal procedural rules, and under the substantive and procedural law of Pennsylvania. *Id.* at 414. For the federal procedural support, the *McCullough* court analogized the petitioner's request to a claim for a temporary restraining order under Federal Rule of Civil Procedure 65. *Id.* at 415-16.

### A. FEDERAL PROCEDURAL LAW SUPPORTS ISSUING A WARRANT IN LIEU OF A WRIT OF *HABEAS CORPUS*

Like the *McCullough* court, this Court will analyze whether there is federal support for a warrant by analogizing Petitioner's request to a claim for injunctive relief. *See Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004) (analogizing that a liquor license commissioner's decision to shut down a restaurant was similar to a judicial decision to issue a temporary restraining order and was therefore proper). The standard for issuing a

temporary restraining order is identical to the standard for a preliminary injunction. *Kaczmarski v. Wheaton Cmty. Unit Sch. Dist.*, 2004 WL 1093348, *4 (N.D. Ill. May 4, 2004). In order to obtain a preliminary injunction, the moving party must show that: "(1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004). If the movant can meet this threshold burden, then the inquiry becomes a "sliding scale" analysis where these factors are weighed against one another. *Id.*

This Court concludes that Petitioner has established the requirements for obtaining a preliminary injunction directing that Aaron be immediately taken into protective custody and that Brown be immediately brought before the Court.

### 1. *Success on the Merits*

First, there is a reasonable likelihood of success on the merits of Petitioner's request based upon ICARA and the documents provided to this Court. Again, at the ICARA hearing, the Court must determine: 1) that Respondent removed or retained the child away from his habitual residence; and 2) that Petitioner or another institution or body had custody rights over the child and was exercising them at the time of the wrongful removal or retention, or would have done so but for Respondent's actions. *Fabri*, 221 F.Supp.2d at 863.

The Petitioner has supplied this Court with an extensive brief and attachments which

satisfy these two inquiries at this stage of the proceedings. Petitioner claims first that Aaron would be considered a habitual resident of England at the time Respondent brought him to the United States and removed him from the jurisdiction of the High Court of England in 2002. Br. 7. The test for determining the "habitual residence" of an abducted child is by looking at past experience and at the child's home. *Tabacchi v. Harrison*, 2000 WL 190576, *8 (N.D. Ill. Feb. 8, 2000) (Judge Gotschall). *Id.* Petitioner claims that Aaron was born in England, the child of two British citizens, and attended school there before Respondent removed him in 2002. Although it is true that Aaron also lived in Chicago, at this stage, there is enough to conclude that Petitioner would likely prevail in showing that Aaron was a habitual resident of England before the removal.

Next, Petitioner will have to show at a hearing that he or another institution or body had custody rights over the child and was exercising them at the time of the wrongful removal or retention, or would have done so but for Respondent's actions. Again, this Court believes that Petitioner would prevail on this portion of the inquiry as well. Article 3 of the Hague Convention holds that the question of whether a party requesting the return of a child is truly vested with a right of custody is based on the "law of the State in which the child was habitually resident immediately before the removal or retention." Convention, Art. 3. Under English law, the removal of a child who is habitually residing in the United Kingdom is wrongful if "there are relevant proceedings pending in a court in England and Wales." *Re W; Re B* (Child Abduction: Unmarried Father), 2 F.L.R. 146 (Fam. 1998). Also, the

Principal Registry of the High Court of England held custody rights over Aaron and was exercising them at the time Respondent removed Aaron from the country. Before Respondent left, Petitioner had applied to the Principal Registry for parental responsibility order and the Principal Registry had served Respondent. Therefore, Petitioner has shown that he is likely to succeed in showing that Aaron should be brought back to England for a continuation of the English Court's proceedings. Although there are four defenses that the Respondent could raise during this proceeding, *Friedrich,* 78 F.3d at 1067, the Court cannot decide the likelihood that the defenses will prevail without knowing if Respondent will raise any defenses, and if she does, how successful they will be.

### 2. *No Adequate Remedy at Law Exists*

It is clear that no adequate remedy at law exists in this situation. Petitioner, a British citizen, is before this Court by way of a treaty formed at the Hague Convention. He has attempted on four separate occasions to bring Respondent into court in order to determine the parental status of their son Aaron. Based upon the history of this case, if she is served with notice, she will likely flee with Aaron.

### 3. *There is Irreparable Injury*

Next, this Court finds that Petitioner will suffer irreparable harm if a warrant is not issued, which outweighs the irreparable harm the Respondent will suffer if a warrant is issued. Petitioner has been attempting to locate his son since 2001. He has followed correct procedure and has attempted to bring Respondent before a court in order to determine

11

parental status, both in the United States and in England. These attempts have failed because the Respondent has fled upon receiving notice of the proceedings. The possible harm to the Respondent is that she or her son will be brought into protective custody and be prevented from fleeing for a short period of time before a hearing. This does not outweigh the harm to the Petitioner if a warrant is not issued.

### 4. *A Warrant is Within the Public Interest*

Last, this Court determines that it is within the public interest to issue a warrant for Aaron and Brown. Not doing so would allow parties to freely disregard the laws of the United States and its treaties with other countries. These laws were enacted in order to protect children; they should not be disregarded. Both parties are entitled to their day in court to decide the important custody issues involving their son.

### B. ILLINOIS STATE LAW SUPPORTS ISSUING A WARRANT IN LIEU OF A WRIT OF *HABEAS CORPUS*

Having determined that federal procedural law would allow this Court to issue a warrant in lieu of a writ of *habeas corpus,* the next issue is whether Illinois state law would allow for such action. Section 311 of the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA") allows for a court to take custody of a child if it finds that "the child is imminently likely to suffer serious physical harm or be removed from this State." 750 ILCS 36/311. Based on past history, the Court finds that protective custody of Aaron is necessary to prevent Brown from removing him. The UCCJEA clearly gives this Court authority to issue a warrant for protective custody of Aaron.

## IV. CONCLUSION

Because there is support under both federal and state law, and because the Petitioner has shown specific, persuasive proof that the Respondent is likely to flee with Aaron if she receives notice of this proceeding, **it is recommended that the Court enter the attached Order for Issuance of a Warrant in Lieu of a Writ of *Habeas Corpus*.**

**Date: March 24, 2005**

**Respectfully submitted,**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re Application Of:

ALAN JAMES THOMPSON,                )
                                    )       05C 1648
         Petitioner,                )
                                    )
    vs.                             )
                                    )   Case No.
MICHELLE ANNE-MARIE BROWN,           )
                                    )
         Respondent.                )

**ORDER FOR ISSUANCE OF A WARRANT
IN LIEU OF A WRIT OF *HABEAS CORPUS***

This Order is issued in conformance with the Convention on the Civil Aspects of International Child Abduction, done at the Hague on 25 October 1980 and the International Child Abduction Remedies Act, 42 U.S.C. § 11601, *et seq.*

Upon the filing and reading of the Petition for Return of the Child pursuant to the Hague Convention and the International Child Abduction Remedies Act and Petitioner's Petition for a Warrant in Lieu of a Writ of *Habeas Corpus*, it appears that AARON NKOSI BROWN-THOMPSON is a person under 16 years of age, is illegally held in custody, confinement or restraint by MICHELLE ANN-MARIE BROWN a/k/a AZANIA BROWN, at 345 North LaSalle Street, Apt. 2106, Chicago, Illinois 60610-6101, and from which it appears that a warrant should issue in lieu of a writ of *habeas corpus*.

IT IS ORDERED, that a warrant of arrest is issued out of and under the seal of the U. S. District Court, Northern District of Illinois, Eastern Division, directed to the U.S. Marshal or any peace officer within the State of Illinois, commanding the U.S. Marshal or peace officer to take into custody MICHELLE ANN-MARIE BROWN a/k/a AZANIA BROWN and protective

custody AARON NKOSI BROWN-THOMPSON, and release the minor to the Petitioner, ALAN JAMES THOMPSON, or, in the event Mr. Thompson has not yet arrived in the United States from England, his agent, or an agent of the Illinois Department of Children and Family Services;

IT IS FURTHER ORDERED, that this case shall be heard at an expedited hearing scheduled on the ___ day of _____, 2005, at ____ a.m./p.m., or as soon thereafter as counsel may be heard;

IT IS FURTHER ORDERED, that the U.S. Marshal or peace officer serve a copy of the following listed documents on MICHELLE ANN-MARIE BROWN a/k/a AZANIA BROWN and execute and deliver to Petitioner the appropriate proof of service thereon:

1. Warrant in Lieu of a Writ of *Habeas Corpus*; and

2. Notice of Petition Under Hague Convention and Order to Show Cause; and

3. Petition for Return of Child to Petitioner Pursuant to the Hague Convention and Brief in Support thereof.

IT IS ORDERED, that Petitioner or his agent shall not remove AARON NKOSI BROWN-THOMPSON from the State of Illinois pending further order of this Court, and

IT IS FURTHER ORDERED, that this Order shall give the U.S. Marshal or any peace officer within the State of Illinois the authority to search 345 North LaSalle Street, Apt. 2106, Chicago, Illinois 60610, or any other place where AARON NKOSI BROWN-THOMPSON is reasonably believed to be present, for the purpose of determining whether AARON NKOSI BROWN-THOMPSON is present.

Entered:_____

_____
United State District Judge

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. 636(b)(1)(B); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir. 1995); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258 (7th Cir. 1989).

**Copies mailed to:**

David A. Wheeler
Dykema Gossett Rook Pitts, PLLC
10 South Wacker Dr., Suite 2300
Chicago, IL 60606
312-876-1700

Counsel for Petitioner